1 LEECH TISHMAN FUSCALDO & LAMPL, LLP
2 Thomas J. Peistrup, CA SBN 213407
   email: tpeistrup@leechtishman.com
3 Laura M. Lloyd, CA SBN 242224
   email: llloyd@leechtishman.com
4 100 Corson Street
   Third Floor
5 Pasadena, California 91103
   Telephone: (626) 796-4000
6 Facsimile: (626) 795-6321

7 Attorneys for Plaintiff, ABSORPTION PHARMACEUTICALS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ABSORPTION PHARMACEUTICALS, LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>ENDURE HOLDINGS, LLC, a Florida limited liability company, ROBERT CARLSON, an individual, ROGER A. TICHENOR, an individual, RANDALL OSER, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants | **CASE NO.: 2:16-CV-01405**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br>1. **FALSE ASSOCIATION UNDER LANHAM ACT [15 U.S.C. §1125(a)(1)(A)];**<br>2. **FALSE ADVERTISING UNDER LANHAM ACT [15 U.S.C. §1125(a)(1)(B)];**<br>3. **STATUTORY FALSE ADVERTISING AND UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.];**<br>4. **VIOLATION OF CAL. BUS. & PROF. CODE § 17500;**<br>5. **UNJUST ENRICHMENT.**<br>**\*\*\*JURY TRIAL DEMANDED\*\*\*** |

## INTRODUCTION

This action arises out of the Defendants' false and misleading statements and conduct in connection with their marketing of a product putatively in competition with that of Plaintiff Absorption Pharmaceuticals, LLC ("Absorption" and/or "Plaintiff").

As set forth below, Defendants are engaged in the unlawful advertising and marketing of a product for the treatment of male sexual dysfunction by, *inter alia*, (i) misrepresenting to the consuming public that their product – marketed under the name "Endure" – is "approved" by the U.S. Food & Drug Administration ("FDA") and (ii) misrepresenting to the consuming public the nature, characteristics and quality of their "Endure" product through the use of highly misleading endorsements by one of the Defendants – a physician who not only lacks any relevant training or expertise, but who also lost his medical license in at least one state after having pled guilty to fraudulently issuing prescriptions as part of a massive steroid distribution ring.

In support of its claims against Defendants, Absorption alleges as follows:

## PARTIES

1. Absorption is a limited liability company organized and existing under the laws of the State of Delaware, and authorized to do business in the State of California. Absorption's principal office is located in Huntington Beach, California.

2. Absorption is informed and believes, and on that basis alleges, that Defendant Endure Holdings, LLC ("Endure Holdings") is a limited liability company organized and existing under the laws of the State of Florida with an address of 5602 Marquesas Circle, Suite 207, Sarasota, FL 34233.

3. Absorption is informed and believes, and on that basis alleges, that Defendant Robert Carlson ("Dr. Carlson") is an individual with a place of residence in Sarasota, Florida.

4. Absorption is informed and believes, and on that basis alleges, that Defendant Roger A. Tichenor ("Tichenor") is an individual with a place of residence in Sarasota, Florida.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

5. Absorption is informed and believes, and on that basis alleges, that Defendant Randall Oser ("Oser") is an individual with a place of residence in Sarasota, Florida.

6. Absorption is informed and believes, and on that basis alleges, that Defendants Dr. Carlson, Tichenor, and Oser are managers and members of Endure Holdings, LLC.

7. Absorption does not know the true names of Defendants Does 1 through 10 or their true capacities, whether as individuals, corporations, partnerships, joint ventures and/or associations of these defendants. When Absorption ascertains the true names and/or capacities of any of these defendants, Absorption will amend its Complaint accordingly. Absorption is informed and believes that, and on that basis alleges that, at all relevant times each of these defendants named in this Complaint as one of Does 1 through 10 was responsible in some manner for the events and happenings alleged in this Complaint.

8. Absorption is informed and believes, and on that basis alleges, that, at all times mentioned in this Complaint, Endure Holdings, Dr. Carlson, Tichenor, Oser, and Does 1-10 (collectively, the "Defendants") were the agents, servants and employees of their Co-Defendants, and in doing the things set forth in this Complaint were acting within the scope of their authority as such agents, servants and employees, and with the permission and consent of their Co-Defendants. Moreover, Absorption is informed and believes, and on that basis alleges, that each Defendant ratified the acts of his/her/its Co-Defendants, as more particularly alleged in this Complaint.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over the claims that relate to federal false advertising and unfair competition pursuant to 15 U.S.C. §§ 1116(a) and 1121(a), and pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the laws of the United States. This Court has supplemental jurisdiction over the claims that arise under California statutory and common law

pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these are joined with substantial and related claims under trademark laws and because the state law claims are so related to the federal claims in this action that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. Jurisdiction and venue are proper in this Court pursuant to the "terms and conditions" set forth on two websites used by Defendants as the primary vehicle for the conduct complained of herein. Specifically, Defendants' web page https://endurese.com/terms-and-conditions/, retrieved on February 29, 2016, reads in relevant part:

> "You agree that jurisdiction over and venue in any legal proceeding directly or indirectly arising out of or relating to this site (including but not limited to the purchase of Endure Holdings, LLC products) shall be in the state or federal courts located in Los Angeles County, California."

Defendants' web page https://www.endureholdings.com/terms-and-conditions, retrieved on February 29, 2016, contains identical language. True and correct copies of the foregoing "terms and conditions" pages are attached hereto as **Exhibits** "**1**" and "**2**," respectively. (Absorption contests the applicability of any portion of such "terms and conditions" to the conduct alleged herein, save Defendants' demand for the application of California law and consent to this Court's jurisdiction.)

11. In the alternative, this Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states.

12. Moreover, personal jurisdiction over Defendants is proper because Defendants have sold the offending product in this district and have caused (and continue to cause) damage to Absorption in this district.

13. In addition to the foregoing, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions

giving rise to these claims occurred in this judicial district, Defendants are subject to this Court's personal jurisdiction, and Defendants have caused (and continue to cause) damage to Absorption in this district.

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF
### Absorption and its Pharmaceutical Treatment "PROMESCENT"

14. Absorption was formed in 2008 to manufacture and distribute PROMESCENT, a revolutionary treatment in the field of male sexual dysfunction. PROMESCENT was developed by Absorption co-founder Dr. Ronald Gilbert, a renowned urological physician with a practice at Hoag Hospital in Newport Beach, California. The company was first formed under the name G&H Brands, LLC, reflecting the initials of its co-founders, before its name was changed to Absorption Pharmaceuticals, LLC. In 2010, the company secured federal trademark protection for PROMESCENT under United States Trademark Registration No. 3,793,979.

15. Given the innovative nature of PROMESCENT, Absorption has obtained several pharmaceutical patents for the treatment, including United States Patent Nos. 8,507,561; 8,563,616; and 8,637,577. Further attesting to PROMESCENT's medical advantages, more than 1,000 urologists across the United States regularly recommend PROMESCENT to their patients. Moreover, through Absorption's significant promotional efforts, PROMESCENT has enjoyed great commercial success and developed significant goodwill. All of these factors, combined with its enhancement of sexual function, combine to make PROMESCENT an ongoing target of often-unsavory counterfeiters and copycats.

### Defendants' Long History of Peddling Illicit and Unapproved Treatments Through the Use of Inflated Advertising Claims.

16. Defendants aggressively market their "Endure" product using the purported bona fides of Dr. Carlson, including by describing the product as a

- 4 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

"physician-designed solution" and touting Dr. Carlson's purported expertise as an "age management physician" to buttress their advertising claims.

17. Absorption is informed and believes, and on that basis alleges, that, in truth, Dr. Carlson began his medical career as a cardiologist and cardiac surgeon, and has no training or experience in the field of urology, the area relevant to the treatment of male sexual function.

18. Absorption is informed and believes, and on that basis alleges, that for well over a decade Dr. Carlson has been using a uniform sales pitch (with minor variations) with respect to wide variety of purported remedies, including human growth hormone. According to media reports, Dr. Carlson has marketed human growth hormone as a means to "help you lose weight, get stronger, build muscle definition, and enhance your sex life" – language that sounds eerily similar to that on websites through which Dr. Carlson continues to market various "non-conventional" treatments.

19. In 2007, New York prosecutors brought charges against Dr. Carlson in connection with "Operation Which Doctor," a state and federal investigation into a conspiracy to distribute steroids. According to prosecutors, in the early 2000's Dr. Carlson became involved in a massive steroid distribution ring by writing thousands of bogus prescriptions for steroids and human growth hormone. Dr. Carlson was charged with seven felony counts, eventually pleading guilty to fraud in exchange for testimony against his co-conspirators. As part of his plea deal, Dr. Carlson agreed to surrender his New York medical license.

20. Subsequent to these criminal and regulatory actions in New York, the Florida Department of Health brought a complaint against Dr. Carlson as part of an action against his medical license. In 2008, Dr. Carlson settled with the Florida Board of Medicine, agreeing to pay a fine, perform community service and "not [to] violate … any … state or federal law, rule or regulation relating to the practice of medicine." A true and correct copy of the Florida Board of Medicine's April 16, 2008 Final Order

with respect to the matter, along with the Florida Department of Health Administrative Complaint and the Settlement Agreement, are attached hereto as "**Exhibit 3**."

21. Notwithstanding these "setbacks," Dr. Carlson appears to have resumed with gusto the marketing of various pills, tonics and elixirs designed to prey on the insecurities and desperation of vulnerable consumers. Specifically, Dr. Carlson now peddles "cures" not only for sexual dysfunction, but also for baldness (through a product called PRO-VÄXA) as well as obesity and diabetes (through a weight-loss pill called "Stop-It," which, among its (literally) unbelievable qualities, purports to "cure" diabetes). True and correct copies of representative web pages for these products are attached hereto as **Exhibits** "**4**" and "**5**," respectively.

22. On or about March 9, 2015, Defendants appear to have introduced their "Endure" product by issuing a press release, disseminated throughout the United States by means of the PR Newswire service, titled "<u>Endure Desensitizing Sexual Enhancement Spray Is FDA Approved</u>." A true and correct copy of the press release is attached hereto as **Exhibit "6."** The press release quotes Dr. Carlson extensively and repeatedly claims that Defendants' product is "FDA approved."

23. At about this time, Defendants also published their two websites (endurese.com and endureholdings.com), with both sites likewise claiming that the "Endure" product is "FDA approved." In addition, Defendants published and continue to maintain a Facebook profile prominently claiming that "Endure" is "FDA approved."

24. In reality, the FDA has not "approved" "Endure" for the treatment of any disease or condition. As set forth on the "Dailymed" website maintained by the National Institutes of Health in conjunction with the FDA, "Endure" is not "approved" by the FDA and the FDA "has not evaluated whether [Endure] complies" with applicable regulations and policies (http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=87127b90-97e3-4af7-be1a-86e51a9a1a6c, retrieved February 29, 2016, true and correct copy attached hereto as "**Exhibit 7**.").

25. Thus, Defendants' claims of "FDA approval" are blatantly false and misleading.

26. Further, at least one of Defendants' web sites claims that the "Endure" is manufactured by a vendor that is "FDA certified." Absorption is informed and believes, and on that basis alleges, that Defendants' contracted manufacturer is not, in fact, "certified" by the FDA, but is instead simply "registered" with the FDA. In other words, Defendants are attempting to mislead consumers into believing that the FDA has endorsed their manufacturer when, in fact, their manufacturer has merely complied with minimal registration requirements.

27. These false statements were made for the purpose of misleading the consuming public by attributing to "Endure" a stamp of official government approval that it does not have, thereby improperly inflating the perceived quality, safety, and efficacy of Defendants' product.

28. Moreover, Defendants' use of Dr. Carlson's endorsement in connection with the marketing of "Endure" is highly misleading to the reasonable consumer inasmuch as it falsely suggests that "Endure" was created, and is endorsed, by a physician with relevant experience and qualifications.

29. On May 28, 2015, Absorption's legal counsel sent a letter to Defendants demanding (among other things) that Defendants immediately "cease and desist from the sale, offering for sale or distribution of 'Endure' using any false or misleading advertising,'" including specifically the statements and advertising described in this Complaint.

30. Notwithstanding Absorption's "cease and desist letter" and the clear notice provided thereby, Defendants have persisted in the false statements and advertising described herein.

///

///

///

- 7 -
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

# FIRST CAUSE OF ACTION
## (False Association under the Lanham Act against All Defendants)

### [15 U.S.C. § 1125(a)(1)(A)]

31. Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-30.

32. 15 U.S.C. § 1125(a)(1)(A) prohibits the use in commerce of any representation of fact "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, …"

33. Absorption has standing to bring suit under 15 U.S.C. § 1125(a) in that, as detailed herein, (i) it has incurred injury to commercial interest in reputation and sales, and (ii) it has suffered economic or reputational injury flowing directly from the deception wrought by the defendant's advertising.

34. As set forth on the "Dailymed" website maintained on behalf of the FDA, "Endure" is not "approved" by the FDA and the FDA "has not evaluated whether [Endure] complies" with applicable regulations and policies. *See* **Exhibit 7**.

35. Accordingly, Defendants' assertion that their product is "approved" by the FDA is categorically false.

36. Defendants also claim that their product's manufacturing process is "FDA Certified." This statement is likewise false and highly misleading to the consuming public. Absorption is informed and believes, and on that basis alleges, that Defendants' contracted manufacturer is not, in fact, "certified" by the FDA, but is instead simply "registered" with the FDA. In other words, Defendants are attempting to mislead consumers into believing that the FDA has endorsed their manufacturer when, in fact, their manufacturer has merely complied with minimal registration requirements.

- 8 -
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

37. Among the consuming public, the foregoing misrepresentations have caused confusion or mistake, or deceived, or are likely to do so, as to affiliation, connection, or association of the FDA with Defendants' "Endure" product, and, further, have caused confusion or mistake, or deceived, or are likely to do so, by implying the FDA's sponsorship or approval of the "Endure" product.

38. The foregoing misrepresentations are material inasmuch as they have misled consumers into purchasing "Endure."

39. Defendants have caused the foregoing misrepresentations to enter interstate commerce through, inter alia, their own press release and websites.

40. Absorption has been injured or is likely to be injured as a result of Defendants' false statements – including, without limitation, through the diversion of sales from Absorption to Defendants.

41. By the conduct described above, Defendants have violated the Lanham Act, have unfairly competed with and injured and, unless immediately restrained, will continue to injure Absorption, causing damage to Absorption in an amount to be determined at trial.

42. By reason of the foregoing false statements, Defendants are liable to Absorption for false advertising and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**SECOND CAUSE OF ACTION**
**(False Advertising under the Lanham Act against All Defendants)**

**[15 U.S.C. § 1125(a)(1)(B)]**

43. 15 U.S.C. § 1125(a)(1)(B) prohibits the use in connection with any goods or services of any representation of fact "in commercial advertising or promotion, [which] misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

- 9 -
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

44. Absorption has standing to bring suit under 15 U.S.C. § 1125(a) in that, as detailed herein, (i) it has incurred injury to commercial interest in reputation and sales, and (ii) it has suffered economic or reputational injury flowing directly from the deception wrought by the defendant's advertising.

45. As set forth above, in their advertising Defendants have misrepresented, and continue to misrepresent to the consuming public that their "Endure" product is "FDA Approved" and that product's manufacturing process is "FDA Certified." Additionally, Defendants have used the purported bona fides of Dr. Carlson to falsely imply that "Endure" was developed by a physician with relevant training and experience, when, in fact, he has neither.

46. Such statements misrepresent the nature, characteristics, qualities of the "Endure" product.

47. The foregoing misrepresentations are material inasmuch as they have misled consumers into purchasing "Endure."

48. Defendants have caused the foregoing misrepresentations to enter interstate commerce through, inter alia, their own press release and websites.

49. Absorption has been injured or is likely to be injured as a result of Defendants' false statements – including, without limitation, through the diversion of sales from Absorption to Defendants.

50. By the conduct described above, Defendants have violated the Lanham Act, have unfairly competed with and injured and, unless immediately restrained, will continue to injure Absorption, causing damage to Absorption in an amount to be determined at trial.

51. By reason of the foregoing false statements, Defendants are liable to Absorption for false advertising and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

/ / /

/ / /

## THIRD CAUSE OF ACTION
### (False Advertising and Unfair Competition against All Defendants)

### [Cal. Bus. & Prof. Code § 17200 et seq.]

52. Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-51.

53. As alleged above, Defendants have made false statements of fact in commercial advertisements about their "Endure" product. For example, Defendants have repeatedly stated that "Endure" is "approved" by the FDA, when, in fact, it is not. Moreover, Defendants have implied that "Endure" was developed (and is endorsed) by a physician with relevant experience and qualifications – namely, Dr. Carlson – when, in fact, he has neither.

54. Defendants' conduct, including the above-referenced false statements, constitutes false advertising and unfair competition under California Business and Professions Code § 17200 et seq.

55. Absorption has been injured or is likely to be injured as a result of Defendants' false advertising and unfair competition – including, without limitation, through the diversion of sales from Absorption to Defendants.

56. In addition, Absorption has been forced to incur attorneys' fees and costs to remedy Defendants' wrongful conduct and to prevent further harm.

## FOURTH CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 17500 against All Defendants)

57. Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-56.

58. Defendants' statements and conduct alleged above constitute "untrue or misleading" statements concerning Defendants' "Endure" product under California Business and Professions Code § 17500.

59. Defendants made the statements and engaged in the conduct alleged above in connection with the sale, offering for sale, or advertisement of "Endure."

60. Defendants publicly disseminated their false statements through a variety of means – including, without limitation, their own websites and at least one press release.

61. Absorption has been injured or is likely to be injured as a result of Defendants' "untrue or misleading" statements – including, without limitation, through the diversion of sales from Absorption to Defendants.

62. In addition, Absorption has been forced to incur attorneys' fees and costs to remedy Defendants' wrongful conduct and to prevent further harm.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment against All Defendants)

63. Absorption repeats and re-alleges every allegation set forth in Paragraphs 1-62.

64. Defendants have benefited and/or been enriched by their improper and unlawful conduct toward Absorption as described above, and at Absorption's expense.

65. The circumstances are such that equity and good conscience dictate that Defendants should compensate Absorption for any revenue attributable to their improper and unlawful conduct described above.

66. Accordingly, Absorption is entitled to disgorgement of Defendants' unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Absorption respectfully requests that the Court enter judgment against Defendants as follows:

1. On its First and Second Causes of Action (Lanham Act), for disgorgement of Defendants' profits under 15 U.S.C. § 1117(a);

2. On its First and Second Causes of Action (Lanham Act), for damages under 15 U.S.C. § 1117(a) in an amount to be established at trial;

3. On its First and Second Causes of Action (Lanham Act), for treble damages under 15 U.S.C. § 1117(a);

4. On its First and Second Causes of Action (Lanham Act), for Plaintiff's reasonable attorney fees under 15 U.S.C. § 1117(a);

5. On its First and Second Causes of Action (Lanham Act), for a preliminary and permanent injunction precluding Defendants and anyone acting in concert with Defendants from making any false or misleading statement in connection with the selling, offering for sale, or advertising of "Endure" in the United States under 15 U.S.C. § 1116;

6. On its Third and Fourth Causes of Action (Cal. Bus. & Prof. Code § 17200 *et seq.* and § 17500), for a preliminary and permanent injunction precluding Defendants and anyone acting in concert with Defendants from making any false or misleading statement in connection with the selling, offering for sale, or advertising of "Endure";

7. On its Third and Fourth Causes of Action (Cal. Bus. & Prof. Code § 17200 et seq. and § 17500) for attorney fees as provided by Cal. Code of Civil Procedure § 1021.5;

8. On its Third and Fourth Causes of Action (Cal. Bus. & Prof. Code § 17200 et seq. and § 17500), pursuant to Cal. Bus. & Prof. Code sections 17203 and 17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants to ordered to restore to the general public all funds acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business and Professions Code § 17200 et seq., or untrue or misleading advertising under Cal. Bus. & Prof. Code § 17500 et seq.

9. On its Fifth Cause of Action (Unjust Enrichment), for an order from the Court requiring that Defendants provide complete accountings and for equitable relief,

including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants had complied with their legal obligations, or as equity allows;

10. On all causes of action, for all costs of suit;

11. On all causes of action, for a judicial declaration that Dr. Carlson's activities, as alleged herein, are in violation of state and federal law relating to the practice of medicine as specified in his 2008 Settlement Agreement with the Florida Department of Health, approved, adopted and ordered by the Florida Board of Medicine; and,

12. On all causes of action, for such other and further relief as the Court may deem just and equitable.

DATED: February 29, 2016    **LEECH TISHMAN FUSCALDO & LAMPL, LLP**

By:  /s/Thomas J. Peistrup
     Thomas J. Peistrup
     Laura M. Lloyd
     Attorneys for Plaintiff,
     Absorption Pharmaceuticals, LLC

## JURY DEMAND

Absorption demands a jury trial on all issues triable to a jury.

DATED: February 29, 2016      **LEECH TISHMAN FUSCALDO & LAMPL, LLP**


By:  /s/Thomas J. Peistrup
Thomas J. Peistrup
Laura M. Lloyd

Attorneys for Plaintiff,
Absorption Pharmaceuticals, LLC